## HOTCHKISS *v.* STATE.

### Opinion delivered April 3, 1916.

1. EVIDENCE—HOMICIDE—REMARKS OF ACCUSED.—Evidence of statements of accused made after the killing to witness, deceased's sister, may be admissible to show motive for the crime.

2. EVIDENCE—HOMICIDE—PROOF OF ABSENCE OF MOTIVE.—Defendant, in a prosecution for homicide, when it is sought to be shown that sexual intercourse with one E. was the motive for the crime, may prove in rebuttal, absence of such motive, by showing his previous relations with the said E.

Appeal from Phillips Circuit Court; *Edwin Bevens,* Special Judge; reversed.

The appellant, *pro se.*

1. Improper evidence was admitted to appellant's prejudice. 58 Ark. 55; 69 *Id.* 558; 82 *Id.* 58; 99 *Id.* 604; 101 *Id.* 147; 112 *Id.* 589, 592-3.

2. Evidence was improperly excluded. 52 Ark. 309; 82 *Id.* 58.

*Wallace Davis,* Attorney General, and *Hamilton Moses,* Assistant, for appellee; *W. R. James,* of counsel.

1. The testimony was admissible to how motive. Clarke, Cr. Law, 50; 25 Ark. 380; 97 Mass. 565. Also as *res gestae.* 43 Ark. 99, 103; 1 Wharton on Ev. (3 ed.), § § 259, 262; 64 Ark. 121; 120 Ark. 160; 171 S. W. 867. If error was committed it was not prejudicial. 120 Ark. 236.

2. There was no error in excluding testimony of Classy Hotchkiss and G. L. Washington. 87 Ark. 52; 105 Ark. 254; 89 Ark. 95; 95 *Id.* 438. No prejudice resulted.

SMITH, J.   Appellant was convicted of the crime of murder in the first degree, alleged to have been committed by shooting one Roberta Hotchkiss with a pistol. The evidence on the part of the State was to the effect that at about midnight the deceased and her two sisters, accompanied by two men, were returning from a "moonlight picnic," and, as they were walking along a railroad track, appellant came up from behind, and, calling out "Halt!" began firing his pistol as deceased and her companions turned around.   Roberta fell at the first shot, whereupon appellant shot and killed her sister, one Maude Trotter.   Other members of the party ran away except Will Ella Yandall, who was the other sister.   Will Ella testified that immediately after the shooting appellant said to her, "Now, you G— d— b—, get up the track," and that he took her to his sister's house and compelled her to stay with him until 4 o'clock in the morning, at which time he left her with the remark, "I am gone, and, G— d— you, you had better not tell what direction." Will Ella denied that she had ever had sexual intercourse with appellant prior to that night.   Evidence of others present at the time of the killing tended to corroborate the story told by Will Ella.

In his own behalf appellant testified that on the day before the killing he had had trouble with one Ed Anderson, who was Will Ella's escort on the night of the killing. That at the time of the first trouble Anderson said, "You are bigger than I am now, but the next time I see you I will be as big as you are."   This remark was occasioned by the fact that Anderson was prevented from assaulting appellant by the exhibition of a pistol.   That as he came up with a party, of which Anderson was a member, he stumbled and hurt his leg and cursed, whereupon Anderson asked who it was, and Will Ella told him, when Anderson commenced shooting and shot him in the leg. That Roberta came to his assistance and was shot by Anderson.   That after the shooting was over he carried Will Ella to his sister's house, at her request, and that he left that night and made his escape and was gone for

several years before he was captured. He further testified that an intimacy had existed between himself and Will Ella for a number of years, and that he stayed with her whenever he pleased. He also offered to prove by one G. L. Washington that he had known both appellant and Will Ella for a number of years, and knew they had lived together as man and wife; but this evidence was excluded by the court.

Appellant objected to the admission of the statements alleged to have been made by him to Will Ella after the shooting and on the following morning; but it is said in reply that this evidence is competent as tending to show the motive which prompted the commission of the crime; and we think it was competent for that purpose. But we think it was equally as competent for the defendant to prove the absence of motive. This he undertook to do by showing that his relations with Will Ella were and had been such that there was no necessity to resort to force to accomplish his purpose. Certain evidence to this effect by appellant's mother was also excluded. Evidence which would have rebutted the State's theory of appellant's lustful purpose was thus excluded, and we think this was erroneous and necessarily prejudicial, and for this error the judgment must be reversed and the cause remanded for a new trial.